## Case No. 3,740.

### The DEFIANCE.

[6 Ben. 162;[1] 5 Chi. Leg. News, 97.]

District Court, S. D. New York.  July, 1872.

BILL OF LADING—FREIGHT ON PINE WOOD—"NORFOLK INSPECTION."

A vessel took on board at Norfolk, Va., a quantity of pine wood, and her master signed a bill of lading, which described the wood as being "112½ cords pine wood, Norfolk inspection," and agreed for its delivery at New York on payment of freight "at four dollars per cord." The vessel arrived in New York, where the consignee refused to pay $450 for the freight, but insisted that the cargo should be discharged and measured, and that freight should be paid only at the rate of $4 per cord on such measurement. The wood was then discharged by the vessel, and deposited in a proper wood-yard, of which the consignee had knowledge. He filed a libel against the vessel to recover the value of the wood, alleging that the master had sold it and converted it to his own use: *Held*, that, on the bill of lading, the vessel was entitled to receive the $450 as freight; that she delivered all the wood she took on board at Norfolk; that it was not made to appear by the libellant that the master had sold and converted the cargo, and that the libel must be dismissed.

[Distinguished in Gibson v. Brown, 44 Fed. 99.]

W. R. Beebe, for libellant.
J. H. Choate, for claimant.

BLATCHFORD, District Judge. On the 14th of August, 1868, the master of the schooner Defiance, at Norfolk, Virginia, took on board of that vessel a quantity of pine wood, under a bill of lading given by him, which described it as "112½ cords pine wood, Norfolk inspection," and stated that it was to be delivered to the libellant, Samuel Kimmelstiel, at New York, on payment of freight at "four dollars per cord." The libel avers that the libellant, after the vessel arrived at New York, demanded the delivery of the wood to him, and tendered and offered to pay to the master freight on all the wood on board, according to the bill of lading, but the master refused to deliver any part of it, and, on the contrary, sold it at private sale, without notice to the libellant, and converted it to the use of the vessel. The libel claims the value of the wood at $9 per cord, less the freight. The answer denies that the libellant tendered or offered to pay to the master freight upon the wood on board according to the bill of lading, or that the master refused to deliver it or any part of it, or sold it or converted it to the use of the vessel. It alleges that the master duly notified the libellant of the arrival of the vessel with the wood on board, and duly tendered and offered to deliver the wood to him on payment of the freight, as provided by the bill of lading, and demanded payment of said freight, but the libellant refused to pay the same or to receive the wood on and by payment of the freight

provided in the bill of lading; that thereupon the master discharged the wood from the vessel at New York at a suitable place, with notice to the libellant; and that the libellant afterwards got the wood without paying freight.

The evidence shows that the vessel brought to New York, and discharged, all the wood which she took on board at Norfolk. The contest between the libellant and the master was as to the amount of freight to be paid. The master claimed that, if he delivered all the wood he took on board, he was entitled to be paid $450 as the freight. The libellant refused to pay that amount, even though all the wood should be delivered to him, and insisted on having the wood landed and then measured by the cord, and on paying freight at the rate of $4 per cord on what the wood should thus measure. Such was not the contract of the parties. The agreement of the bill of lading was, that the wood put on board of the vessel should be called 112½ cords, and should pay freight at $4 for each of such cords. The contract was the same in legal effect as if the gross sum of $450 had been named as the freight. The bill of lading is satisfied by delivering all the wood taken on board. It is shown that the wood parts with its bark, by being handled, in being loaded and discharged. The vessel is entitled to be paid for transporting the wood as put on board, and not as it may measure after being discharged at the port of delivery. The libellant, therefore, when he brought the suit, had no cause of action against the vessel, founded on refusal of the master to deliver any part of the wood unless he should be paid $450 freight on delivery of all he had taken on board.

The wood having been tendered to the libellant, and he having refused to pay the proper freight on it, it was discharged by the vessel and deposited in a suitable wood-yard. The libellant had immediate knowledge of such place of deposit. The circumstances of the case, as shown in evidence, prove acquiescence by the libellant in such deposit of the wood. Knowing where it was, and that the person who had it in custody had no title to it, he suffered it to remain with him and to be treated by him as his own property. The allegation that the master sold the wood and converted it to the use of the vessel, is one which must be satisfactorily established affirmatively by the libellant. It is not so established. It rests on the testimony of a single witness, and that is the testimony of the person with whom the wood was deposited, and who says that he bought the wood from the master. I cannot credit his story, and it is contradicted by the master. If I credit it, I must convict the master of felony, and the alleged purchaser of fraud, for the latter knew, from the circumstances of the case, that the wood did not and could not belong to the master.[a]

The libel is dismissed, with costs.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]